**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**DOCKET NO: 1:19-CR-00048-MOC-WCM-1**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **ORDER** |
| **VETO OMAR MARTIN,** | ) | |
| | ) | |
| Defendant | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Suppress Evidence and Incorporated Memorandum of Law. (Doc. No. 10). The motion has been fully briefed, oral argument has been held, and this matter is now ripe for review. For reasons set forth in this Order, Defendant's suppression motion is DENIED.

## I.    FACTUAL BACKGROUND

On November 28, 2018, Detective Joshua Harris of the Asheville Police Department Drug Suppression Unit applied for a warrant to search a residence located at 144 Stewart Street in Asheville, North Carolina. (Doc. No. 10-1, at 6). To support the application, Detective Harris submitted an affidavit detailing his experience, as well as the factual circumstances giving rise to the warrant request. The following relevant facts are taken from the affidavit.

Two months before the application, the Unit first spoke with a confidential informant who indicated "he/she could purchase crack [cocaine] and heroin from several females within the residence." (Id. at 9). About one month later, the Unit gave the informant an "amount of money" and sent the informant to make "a controlled purchase of narcotics from the residence." (Id.). Beforehand, the Unit ensured the informant did not have any contraband or other money. Detectives observed the informant entering the residence, "conversing with a female within the

residence," and exiting. (Id.). Thereafter, the informant gave Detective Harris "a controlled substance consistent in the amount [of] money given for the purchase." (Id.).

Around seventy-two hours prior to application, Detective Harris sent another confidential informant to make "a controlled purchase of narcotics from the residence." (Id.). This purchase was conducted in precisely the same manner; the informant was given an amount of money, and officers ensured the informant did not have any contraband or other money on hand. Again, the officers observed the informant enter the building, speak "with a female within the residence," and ultimately exit. And again, the informant gave Detective Harris "a controlled substance consistent in the amount to the money given for the purchase." (Id. at 10).

Detective Harris averred that this was not his first controlled purchase. As an officer in the Asheville Police Department, he has "investigated numerous narcotics incidents and [has] been a part of several search warrants resulting in the arrest of persons and the seizure of property as well as [the] successful prosecution of narcotics offenders." (Id. at 7). And in the Drug Suppression Unit, he has "conducted operations encompassing multiple facets of drug investigations to include surveillance, undercover operations, execution of search warrants on residences, electronic devices and social media accounts, interviews, charging, case file preparation, arrests, property seizure, and evidence management." (Id. at 8).

Based on his experience, Detective Harris knew that "drug dealers maintain on hand large amounts of US currency in order to maintain and finance their operations as an ongoing narcotics business" and they likewise "maintain books, ledgers, notes, money order and other records relating to the transportation, ordering, sell, and distribution of controlled substances." (Id.). He also knew that dealers "conceal in or around their residence caches of drugs, US currency, financial instruments, and evidence of financial transactions surrounding . . . an ongoing

narcotics business." (Id.). Dealers also conceal "paraphernalia" and "firearms" to further "illegal drug activity." (Id. at 8–9). Finally, dealers maintain call records "within the storage systems of their phone in order to facilitate [drug] communication." (Id. at 9).

Based upon these circumstances, a Buncombe County magistrate found probable cause to believe there was evidence of unlawful trafficking in controlled substances within the residence. (Id. at 4). He thus issued a warrant directing officers to search the property within forty-eight hours. Specifically, officers were authorized to search the "residence or its curtilage," as well any "persons" or "vehicles" located there. (Id. at 5).

Officers executed the warrant on the morning of November 30, 2018—before the deadline. During execution, Defendant sat in the driver seat of a vehicle parked in the residence driveway, which was paved and apparently connected to the home. (Doc. No. 13-1). Pursuant to the warrant, officers searched the vehicle and found heroin and crack cocaine inside. After receiving Miranda warnings, Defendant admitted that the drugs in the car belonged to him and that he used the residence to sell narcotics.

## II.    DISCUSSION

Contending that the magistrate's warrant was improperly issued, Defendant moves for the Court to suppress all evidence obtained thereby. (Doc. No. 10). According to Defendant, the warrant affidavit was "wholly lacking in sufficient facts to support a substantial showing of probable cause." (Id. at 2). Because of this deficiency, Defendant argues it was "objectively unreasonable" for officers to rely on the warrant, and thus the good faith exception to the exclusionary rule should not apply. (Id. at 8–9). The Court rejects these arguments in turn.

### A.    Probable Cause

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Ordinarily, this guarantee ensures that officers must obtain a valid warrant prior to conducting a search. See United States v. Lyles, 910 F.3d 787, 791 (4th Cir. 2018). Such warrants must be "issued by a neutral magistrate and supported by probable cause." United States v. Monteith, 662 F.3d 660, 664 (4th Cir. 2011); see U.S. Const. amend. IV.

When determining whether a warrant is supported by probable cause, magistrates "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Bosyk, 933 F.3d 319, 339 (4th Cir. 2019) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). This probable cause inquiry is "not a high bar." Id. (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018)). "And officers need not 'rule out a suspect's innocent explanation for suspicious facts' to obtain a warrant.'" Id. (citation omitted).

Where a magistrate issued a challenged warrant, reviewing courts do not "assess probable cause de novo." Id. Instead, we "limit our inquiry to whether there was a 'substantial basis for determining the existence of probable cause.'" Monteith, 662 F.3d at 664 (quoting Gates, 462 U.S. at 239). In so inquiring, we "accord 'great deference' to the magistrate's assessment of the facts presented to him." Id. But we "may not go beyond the information actually presented to the magistrate during the warrant application process." Lyles, 910 F.3d at 791.

Contrary to Defendant's assertion, Detective Harris's affidavit provided the magistrate with a substantial basis to determine there was probable cause that illegal drugs would be found within the home. Prior to a search, a confidential informant explained that "several females" sold crack cocaine and heroin within the residence. (Doc. No. 10-1, at 6). Thereafter, officers used informants to conduct two controlled purchases at the residence over the course of a month.

Each time, the informants spoke with a "female" and exited with a quantity of drugs consistent with the amount of money provided. These purchases doubly supported probable cause by verifying the informant's reliability and by providing independent evidence of drug trafficking. Together, the reliable tip, multiple sellers, and multiple controlled purchases "plainly established a 'fair probability' that illegal narcotics would be found in [the residence], and accordingly supported the magistrate's finding of probable cause." United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994); see United States v. Patterson, 406 F. App'x 773, 783 (4th Cir. 2011); United States v. Hicks, No. 5:18-CR-279-BO, 2019 WL 1052001, at *2 (E.D.N.C. Mar. 5, 2019).

Defendant recognizes that the warrant here fails to identify by name the "several females" who sold drugs within the home. To be sure, failing to identify an alleged dealer can undermine probable cause. This is because the "lack of information about the identity of the seller creates an obvious problem: if a non-resident had been the individual who had sold drugs to the informant—if [the owner] was not the drug trafficker—there would be no reason to believe that, . . . later, there would be drug contraband or financial records of drug transactions in [the owner's] residence." United States v. Lull, 824 F.3d 109, 119 (4th Cir. 2016).

Even so, Courts have not adopted a per se rule that a residence search warrant must identify suspects by name. This is because "[t]he specificity required by the Fourth Amendment is not as to the person whom the evidence is to be used but rather as to the place to be searched and the thing to be seized." Mays v. City of Dayton, 134 F.3d 809, 814 (6th Cir. 1998) (emphases added); see Lull, 824 F.3d at 120 ("Probable cause to search exists when . . . the totality of the circumstances are sufficient to lead a prudent person to believe that the items sought . . . will be present at the time and place of the search" (emphasis in original) (quoting United States v. Suarez, 906 F.2d 977, 984 (4th Cir. 1990)). Here, a reliable informant reported

that <u>several</u> females were selling drugs within the residence.  Officers successfully purchased drugs from the home on two separate occasions over the course of one month.  Under such circumstances, there is a substantial basis to find a fair probability that illegal drugs and other evidence of drug trafficking[1]  would be found within the residence and its surrounding curtilage[2] within the next forty-eight hours.[3]

### B.     The Good Faith Exception

The Fourth Amendment does not contain a "provision expressly precluding the use of evidence obtained in violation of its commands."   <u>United States v. Leon</u>, 468 U.S. 897, 906 (1984).   Instead, evidentiary suppression is a "judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect."   <u>Id.</u>   This "'deterrence objective' is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued by a magistrate."   <u>United States v. Doyle</u>, 650 F.3d 460, 467 (4th Cir. 2011) (citation omitted).   As such, courts "should not suppress the fruits

---

[1]  In passing, Defendant asserts the "affidavit fails to articulate an actual crime."   (Doc. No. 10, at 4).   The Court disagrees.   The informant reported that "crack and heroin" were sold at the residence.   (Doc. No. 10-1, at 9).   Detective Harris averred that informants purchased "a controlled substance" and "narcotics" at the residence.   (<u>Id.</u>).   This evidence plainly supplies probable cause that individuals were unlawfully trafficking in controlled substances.   (<u>Id.</u> at 4).

[2]  Defendant contends that the search of his vehicle and his person was beyond the scope of the search warrant.   (Doc. No. 10, at 10–11).   Again, the Court disagrees.   By its terms, the warrant extended to the "curtilage of the listed residence," as well as any "persons" or "vehicles" found thereon.   (Doc. No. 10-1, at 5).   Defendant's was seated in his car, which sat in the paved driveway that was apparently connected to the home.   (Doc. No. 13-1).   Officers can detain individuals who are "on the premises during the execution of a search warrant."   <u>Bailey v. United States</u>, 568 U.S. 186, 194 (2013).   And Courts routinely treat the areas "adjacent to the home" as included within a search warrant.   <u>Collins v. Virginia</u>, 138 S. Ct. 1663, 1667 (2018).   Defendant has failed to identify any factor that would command a different result here.

[3]  This ongoing evidence of drug trafficking defeats Defendant's contention that the warrant information was "stale" by the time of the warrant execution.   (Doc. No. 10, at 6).

of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 922 n. 23).

Here, Defendant argues that the "deficiencies" previously discussed make clear that the magistrate "acted as a 'rubber stamp' for the police" and that "no reasonable officer would reasonably rely upon [the warrant] to provide probable cause for a search." (Doc. No. 10, at 9). The Court disagrees. Defendant has not identified any additional evidence showing the magistrate "'wholly abandoned' his detached and neutral 'judicial role.'" Bynum, 293 F.3d at 195 (quoting Leon, 368 U.S. at 923). Instead, Defendant reiterates his disagreement with the magistrate's assessment of the evidence. As explained, disclosing the identity of the "several females" who sold illegal drugs within the home would certainly strengthen the basis for finding probable cause. Still, the reliable tip, multiple sellers, and multiple controlled purchases over the course of a month together create a substantial basis to find a fair probability that evidence of drug trafficking may be found within the residence and its surrounding curtilage. Under the good faith exception to the exclusionary rule, suppression is "inappropriate" where an affidavit can produce "disagreement among thoughtful and competent judges as to the existence of probable cause." Bosyk, 944 F.3d at 333. Accordingly, regardless of whether probable cause existed, the officers reasonably acted in good faith reliance on the warrant.

## III.    CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Suppress the evidence obtained pursuant to a lawful search warrant.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Suppress (Doc. No. 10) is **DENIED**.


Max O. Cogburn Jr.
United States District Judge


Signed: October 2, 2019